***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with the modification of plaintiff's entitlement to temporary total and permanent partial disability benefits.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 22 September 2000 as:
 I.C. NO. 839119 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on the date of the injury giving rise to this claim.
3. The carrier on the risk for workers' compensation purposes is N.C. Farm Bureau Mutual Insurance Company.
4. On or about 23 June 1998, defendants filed a Form 63 Notice to Employee of Payment of Compensation without Prejudice to Later Deny the Claim pursuant to N.C. Gen. Stat. § 97-18(d). On or about 24 August 1998, defendants filed a Form 60 Employer's Admission of Employee's Right to Compensation pursuant to N.C. Gen. Stat. § 97-18(b).
5. Plaintiff's average weekly wage was $384.97, which yields a compensation rate of $256.66.
6. Defendants paid temporary total disability compensation for the period 21 May 1998 through 14 June 1999 as a result of plaintiff's admittedly compensable injury by accident.
7. On or about 21 June 1999, defendants filed a Form 28T Notice of Termination of Compensation by Reason of Trial Return to Work pursuant to N.C. Gen. Stat. §§ 97-18.1(b) and 97-32.1.
 I.C. NO. 985064 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on the date of the injury giving rise to this claim.
3. The carrier on the risk for workers' compensation purposes is N.C. Farm Bureau Mutual Insurance Company.
4. Plaintiff's average weekly wage was $384.97, which yields a compensation rate of $256.66.
5. The Form 18 filed by plaintiff in this claim on or about 3 November 1999 and the Form 61 filed by defendants on or about 16 November 1999 denying plaintiff's claim are a part of the evidentiary record in this matter.
 STIPULATIONS COMMON TO BOTH CLAIMS
1. The parties stipulate to all Industrial Commission forms and orders filed and entered in both of plaintiff's claims.
2. In addition to the deposition transcript of Jerry M. Cummings, the parties stipulated into evidence in this matter stipulated exhibit one, which consists of plaintiff's medical and vocational rehabilitation notes tabbed (a) through (j); and stipulated exhibit two, several pages of employment records. In addition, defendants introduced and the undersigned admitted into evidence in this matter defendants' exhibit one, a blank Form 28U.
3. The issues to be determined as a result of this hearing are whether plaintiff underwent an unsuccessful trial return to work within the meaning of N.C. Gen. Stat. § 97-32.1; whether plaintiff sustained an injury by accident arising out of and in the course of his employment on 22 June 1999; and to what indemnity benefits, if any, is plaintiff entitled as a result of his claims.
 ***********
Based upon the evidence of record, the Full Commission finds as fact the following
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 58 years old. Plaintiff completed the seventh grade after which he did not return to school but instead helped his father run the family farm. Plaintiff is capable of reading but has difficulty with writing and spelling. Plaintiff's primary work experience through his adulthood has been that of a carpenter.
2. Plaintiff began working as a carpenter in approximately 1996 for defendant-employer whose business is that of residential building.
3. On 20 May 1998, plaintiff sustained an admittedly compensable injury by accident when he slipped while working on a roof of a house and fell to the ground. Plaintiff sustained multiple injuries as a result of this admittedly compensable injury by accident. Plaintiff initially was treated at Duke University Medical Center where, among other treatment, he underwent a surgical procedure to reconstruct his left leg fracture.
4. Plaintiff subsequently came under the medical care of Dr. Brian T. Szura at Cary Orthopaedic and Sports Medicine Specialists for his various injuries as a result of his compensable injury by accident, including his complaints of some left lower back pain.
5. On 7 December 1998, plaintiff was evaluated by Dr. Debora Tallio at Southeastern Regional Medical Center Physical Medicine and Rehabilitation Clinic for complaints of low back pain that began in 1967 but had worsened following his 20 May 1998 fall from the roof. Dr. Tallio prescribed diagnostic tests and physical therapy. The diagnostic tests revealed degenerative changes but no evidence of a significant herniated disc.
6. After a course of treatment and a functional capacity evaluation on 29 December 1998, Dr. Szura found plaintiff to be at maximum medical improvement on 6 April 1999. Thereafter, on 18 April 1999, Dr. Szura assigned a permanent partial impairment rating of 20 percent to plaintiff's left leg and gave plaintiff permanent restrictions of light duty work with no working on ladders or at dangerous heights. Dr. Szura restricted plaintiff's squatting, bending, and lifting with a lifting restriction of more than 50 pounds only on a very occasional basis. Plaintiff was considered to be capable of working a full eight-hour day within these restrictions.
7. Defendants employed a vocational consultant to assist plaintiff in locating and returning to suitable, gainful employment. However, many of the job opportunities that the consultant located that were within plaintiff's physical restrictions were not appropriate in light of plaintiff's prior work history, pre-injury wages, and interests, as they were jobs such as employment in fast food restaurants, bagging groceries and custodial work. Accordingly, plaintiff did not actively participate in the job search efforts.
8. However, in the course of the vocational process, it was learned that there was a potential for plaintiff to return to work for defendant-employer. Jerry M. Cummings, one of defendant-employer's owners, and the vocational consultant worked together to draft a job description of a carpenter/labor supervisor. The vocational consultant submitted this job description to Dr. Szura, who approved it on 21 May 1999. Mr. Cummings then wrote plaintiff and asked him to return to work on 10 June 1999.
9. Plaintiff did return to work in this carpenter/supervisor position in June 1999. Accordingly, defendants filed a Form 28T on or about 21 June 1999. On 22 June 1999, plaintiff, in the course of his employment, was casing a door frame and stepped up on a five gallon bucket to reach the top of the door frame when the bucket slipped out from under him, causing him to fall to the floor. Plaintiff felt immediate pain in his back and leg and reported this incident to one of defendant-employer's owners.
10. After falling from the bucket, plaintiff did not return to work in any capacity until the week ending 26 August 1999. He also worked some hours the weeks ending 2 September 1999, 9 September 1999, 4 November 1999, and 11 November 1999. Plaintiff was then out of work for several months and next worked the week ending 14 April 2000.
11. Even prior to his admittedly compensable injury by accident on 20 May 1998, plaintiff had worked sporadic hours for defendant-employer, an arrangement that was acceptable to defendant-employer not only because plaintiff was an experienced and skilled carpenter, but because he is on a friendly basis with Jerry Cummings. Plaintiff continued to work in this somewhat sporadic capacity for defendant-employer through the date of the hearing before the Deputy Commissioner.
12. Plaintiff contends that the incident on 22 June 1999 rendered him unable to work in any capacity for several months, including immediately thereafter and from November 1999 through April 2000. However, the greater weight of the evidence indicates that plaintiff was unable to work as a result thereof from 22 June 1999 and continuing until 26 August 1999.
13. Plaintiff last saw Dr. Szura in April 1999 and did not see another physician until he was seen in February 2000 by Dr. Mark E. Brenner. At this evaluation, Dr. Brenner noted that plaintiff had injured his low back along with his other injuries in the 20 May 1998 injury by accident. Dr. Brenner also felt that the incident on 22 June 1999 re-injured plaintiff's low back. However, Dr. Brenner found plaintiff to be at maximum medical improvement and capable of working on a full-time basis within certain physical restrictions. Dr. Brenner assigned plaintiff a 20 percent permanent partial impairment of the left leg and a three percent permanent partial impairment of the back as a result of the injuries by accident.
12. The greater weight of the evidence of record indicates that plaintiff sustained an injury by accident to his back on 22 June 1999 when he fell from the bucket and as a result sustained additional disability through either a new injury or an aggravation of his pre-existing back condition.
13. Although there are no medical records removing plaintiff from work from 22 June 1999 through 26 August 1999 and no Form 28U was ever signed by a physician certifying that plaintiff's trial return to work was unsuccessful, considering the medical evidence as well as plaintiff's testimony, plaintiff sustained a material aggravation of his back condition including increased back pain as a result of the 20 May 1998 injury by accident and the injury of his back as a result of the 22 June 1999 injury by accident.
14. The greater weight of the evidence indicates that plaintiff was incapable of earning the same or greater wages in any employment as a result of his 20 May 1998 injury by accident and his 22 June 1999 injury from 22 June 1999 until 26 August 1999. Furthermore, as a result of his injuries by accident, plaintiff sustained a 3 percent permanent partial disability to his back.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on 20 May 1998. As a result of this admittedly compensable injury by accident, plaintiff was entitled to and did receive a period of temporary total disability compensation pursuant to N.C. Gen. Stat. § 97-29 and medical compensation pursuant to N.C. Gen. Stat. §§ 97-2(19) and 97-25. N.C. Gen. Stat. § 97-2(6).
2. Furthermore, plaintiff sustained an injury by accident to his back on 22 June 1999 which in combination with plaintiff's original injury by accident resulted in plaintiff's inability to earn the same or greater wages in any employment from 22 June 1999 until 26 August 1999. N.C. Gen. Stat. § 97-2(9).
3. Plaintiff materially aggravated his preexisting back condition on 20 May 1998 and on 22 June 1999. N.C. Gen. Stat. § 97-2(6).
4. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to medical compensation related to his 20 May 1998 and 22 June 1999 injuries by accident for so long as such treatment is reasonably necessary to effect a cure provide relief or lessen the period of plaintiff's disability. N.C. Gen. Stat. § 97-25.
5. As a result of plaintiff's injuries by accident, plaintiff is entitled to permanent partial disability benefits for the 3 percent impairment rating to his back. N.C. Gen. Stat. § 97-31(23).
6. Furthermore, plaintiff is entitled to permanent partial disability benefits for his 20 percent permanent partial impairment to his left leg as a result of his admittedly compensable injury by accident of 20 May 1998. N.C. Gen. Stat. § 97-31(15).
 ***********
The foregoing findings of fact and conclusions of law result in the following
 AWARD
1. Subject to the reasonable attorney's fee awarded herein, defendants shall pay to plaintiff temporary total disability benefits at the weekly compensation rate of $256.66 from 22 June 1999 until 26 August 1999. Said compensation shall be paid in a lump sum.
2. Subject to the reasonable attorney's fee awarded herein, defendants shall pay to plaintiff 49 weeks of permanent partial disability benefits at the weekly rate of $256.66. Said compensation shall be paid in a lump sum.
3. Plaintiff's attorney is entitled to a reasonable fee of 25 percent of the amount awarded to plaintiff. Defendants shall accordingly deduct one-fourth of the lump sum amount due plaintiff and shall forward this directly to plaintiff's counsel.
4. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, defendants shall pay for plaintiff's medical expenses related to his 20 May 1998 and 22 June 1999 injuries by accident for so long as such treatment is reasonably necessary to effect a cure provide relief or lessen the period of plaintiff's disability.
5. Defendants shall bear the cost of this proceeding due the Commission.
This the ___ day of January 2002.
 S/_________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/________________ RENE C. RIGGSBEE COMMISSIONER